936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara A. BRANDENBURG, Plaintiff-Appellee,
v.
R.L. MURPHY, Defendant-Appellant,
Harry E. Cureton, Warren G. Hatfield, Calvin O. Morton, Roy
W. Sharp, and Mark D. Wright, Defendants.
 No. 90-6269.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1991.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 In this section 1983 action for false arrest, police officer R.L. Murphy appeals the denial of his motion for summary judgment based upon the defense of qualified immunity. Our task is to determine whether any genuine issues of material fact remain concerning the availability of this defense. We conclude that no genuine issues of material fact remain, and now reverse.
 
 I.
 
 2
 On June 9, 1984, police officers Warren Hatfield, Roy Sharp, and Mark Wright attempted to serve a peace warrant on Dallas Brandenburg at his property located in Campbell County, Tennessee. Upon entering onto the property, Hatfield advised Dallas of the officers' mission. Dallas had retrieved a rifle for his own use, and at the request of his wife, Barbara Brandenburg, Dallas supplied her with a rifle equipped with a scope. Barbara Brandenburg took cover behind a woodpile and placed the rifle on top of the woodpile, with the gun barrel aimed toward the police officers. Dallas, taking cover behind a second woodpile, fired several shots into the air, and the officers decided to retreat from the property.
 
 
 3
 At that juncture, it was unclear to some of the officers whether Barbara Brandenburg was firing any shots. Dallas got into his truck and pursued the officers, and in an altercation near the gate at the boundary of the property, Officer Sharp shot and killed Dallas. According to Barbara Brandenburg, she then carried her rifle "outstretched" down to the gate and voluntarily relinquished the weapon.
 
 
 4
 The officers requested assistance, and headquarters dispatched Murphy from his home, located at some distance from the Brandenburg property. Murphy testified that he heard from the dispatcher, or over his police radio, that shots had been fired and that "someone was down." Officer Venn testified that messages broadcast on the police channel stated that police officers were coming under gunfire and that a man was attempting to run over them.
 
 
 5
 Murphy arrived shortly after Sharp shot Dallas. According to Murphy, Sharp told him that Barbara Brandenburg was in the area and armed with a rifle. Murphy testified as follows:
 
 
 6
 He mentioned that Mrs. Brandenburg had a rifle and that her husband had some kind of long gun that we found later to be a rifle and that they took a position behind the pile of timbers. And they [the officers] began taking on fire, that they were shot at.... Roy told me that everything went wild, and they got in their car and they tried to back out.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 I specifically remember [Roy] telling me that the scope [of Barbara Brandenburg's gun] was up. I didn't get into the details and ask him how she was holding it.... Roy told me that he put his head down after the first shot went off, and he didn't know what happened after that.
 
 
 10
 While he had no warrant for her arrest, Murphy took Barbara Brandenburg into custody on suspicion of being an accessory to aggravated assault or related crimes.[2] Authorities released her four or five hours later without filing charges.
 
 
 11
 Alleging violations of her and her husband's constitutional rights, Brandenburg brought action under 42 U.S.C. Sec. 1983 in federal district court. Brandenburg took a voluntary dismissal of her claim that the officers arrested her through use of excessive force and without probable cause. A jury awarded Barbara Brandenburg damages with respect to the other constitutional claims, but this court reversed the verdict on appeal because of improper jury instructions. Brandenburg v. Cureton, 882 F.2d 211, 215-16 (6th Cir.1989) ["Brandenburg I "]. The Brandenburg I panel dismissed Hatfield and Wright from the action, but remanded the case for retrial with respect to Sharp. Id.
 
 
 12
 On remand, Brandenburg renewed her claim that Murphy and other officers arrested her without probable cause and through use of excessive force. The officers filed a motion for summary judgment, and the district court granted summary judgment for all the officers with respect to the excessive force claim. The court also granted summary judgment for Hatfield, Wright, and Sharp with respect to the false arrest claim, but denied Murphy summary judgment with respect to this claim.
 
 
 13
 Murphy appeals the district court's interlocutory order denying him summary judgment.[3] He contends that the district court erred in failing to grant him judgment on the false arrest claim on the basis of his qualified immunity as a police officer.
 
 II.
 
 14
 We review a district court's grant of summary judgment de novo. Klepper v. First American Bank, 916 F.2d 337, 341 (6th Cir.1990). Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
 
 
 15
 Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Riebold, Inc., 369 U.S. 654, 655 (1962)). The movant meets its initial burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). At that point, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 250.
 
 
 16
 The applicability of qualified immunity to a given set of facts is a question of law. Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988).
 
 A.
 
 17
 At the time of Brandenburg's arrest, the Supreme Court had clearly established that the Fourth and Fourteenth Amendments forbid unreasonable searches and seizures, including arrests made without probable cause. E.g., Brinegar v. United States, 338 U.S. 160, 175 (1949). Probable cause exists "where the facts and circumstances within [the police officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been ... committed." Id. The existence of probable cause turns upon "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, 338 U.S. at 175. Certainly, "[t]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). These standards allow room for good-faith mistakes as long as the mistakes are "those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Id. at 176.
 
 B.
 
 18
 Murphy contends that he enjoys qualified immunity with respect to Barbara Brandenburg's false arrest claim because based upon the information available to him, he reasonably believed that he had probable cause to arrest her. In Brandenburg I, this court explained the scope of police officers' qualified immunity:
 
 
 19
 Government officials performing discretionary functions have a qualified immunity shielding them from liability for damages as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." This circuit has noted that the question is whether "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." Although this is purely a legal question to be decided by the court, a court may not be able to make a determination if the exact character of the "actions" that Anderson requires the court to consider is unknown.
 
 
 20
 Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir.1989) ("Brandenburg I ") (citations omitted); see generally, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although the government officials bear the burden of establishing qualified immunity as an affirmative defense, the plaintiff bears the burden of "present[ing] facts which if true, would constitute a violation of clearly established law." Cf. Dominque v. Telb, 831 F.2d 673, 677 (6th Cir.1987).
 
 C.
 
 21
 While Brandenburg's abstract right to be from false arrest was clearly established at the time of her arrest, it was not, and is not, clearly established that Murphy's actions violated that right. Although the above-cited cases suggest that Murphy had probable cause to arrest Brandenburg on suspicion of an assault-related crime, such as aiding and abetting her husband in resisting arrest, whether he did or not is not controlling here. He is entitled to qualified immunity if he reasonably believed he had probable cause to make the arrest. We conclude that under the undisputed or indisputable[4] facts recounted above, Murphy reasonably relied upon the information communicated to him by the police dispatcher and by his fellow officers to conclude that probable cause existed to arrest the plaintiff.
 
 
 22
 Accordingly, we hold that with respect to Murphy's claim of qualified immunity from liability for Brandenburg's false answer claim, no genuine issue of material fact remains, and that Murphy is entitled to summary judgment.
 
 III.
 
 23
 For the foregoing reasons, the district court's order denying Murphy's motion for summary judgment is VACATED, and this case is REMANDED to the district court with instructions to enter judgment for Murphy or the false answer claim.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 An officer assisting with the arrest testified that officers arrested Brandenburg "because of the statements the boys gave of the lady pointing the gun towards them."
 
 
 [3]
 This court has jurisdiction to hear this appeal of a denial of a motion for summary judgment because qualified immunity is not a mere defense, but rather is an "entitlement" not to be sued in the first place. Mitchell v. Forsyth, 472 U.S. 511, 525-27 (1985)
 
 
 [4]
 Even if inclined to do so, Barbara Brandenburg is in no position to dispute what Murphy heard on his police radio or from the officers who had already arrived at the Brandenburg property. Apparently unable to remember what he said to Murphy, Sharp testified that he "probably" told Murphy that Barbara Brandenburg had a gun