Linda M. RICH, Guardian of Daniel Walczak, Plaintiff–Appellee,

v.

CITY OF MAYFIELD HEIGHTS; Police Chief Dominic Caprara; Police Officer John Doe; Police Sergeant John Doe; Patrolman John Doe I; Patrolman John Doe II; Corrections Officer John Doe, Defendants–Appellants,

Paramedic John Doe; All Whose Names are Unknown and Whose Addresses are 6154 Mayfield Road, Mayfield Heights, Ohio 44124; Unnamed Uniformed and Plain Clothes Mayfield Heights Police Officers and/or Paramedics Whose True Names and Addresses are Unknown, Defendants.

No. 90–4051.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 9, 1991.

Decided Feb. 4, 1992.

Steven H. Steinglass (argued), Cleveland–Marshall College of Law, Cleveland, Ohio, Patrick D. Quinn (briefed), Quinn, Gonakis & McMahon, Euclid, Ohio, for plaintiff-appellee.

Todd M. Raskin, Mazanec, Raskin & Ryder, Solon, Ohio, John T. McLandrich (argued and briefed), Cleveland, Ohio, for defendants-appellants.

Before RYAN and NORRIS, Circuit Judges, and DUGGAN, District Judge.[*]

DUGGAN, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendant police officers and paramedics failed to properly screen Daniel Walczak for suicidal tendencies prior to incarcerating him at the Mayfield Heights City Jail, and for failing to provide him with proper emergency medical care in violation of his Eighth Amendment rights. Plaintiff also sued the City of Mayfield Heights, Ohio ("the City"), and the City's Police Chief, Dominic Caprara ("Caprara"), for negligent training and hiring. All defendants sought summary judgment. Defendant police officers' summary judgment motion was based on the defense of qualified immunity. The district court granted partial summary judgment dismissing plaintiff's claim against the paramedics because there was no evidence they acted improperly. The court also dismissed, on the basis of qualified immunity, plaintiff's claim that the police officers failed to screen for suicidal tendencies. Plaintiff's claim against Caprara and the City for negligent training and hiring in connection with screening for suicidal tendencies was also dismissed "[b]ecause of the [officers'] qualified immunity and because the right to be screened for suicidal tendencies did not constitute a constitutional right at the time of this inci-

dent." The district court, however, denied the police officers' summary judgment motion based upon qualified immunity as to plaintiff's claim that they failed to provide proper emergency medical treatment (i.e., deliberate indifference to medical needs), and denied the summary judgment motion brought by Caprara and City as to plaintiff's claim of improper hiring and training relative to the claim of deliberate indifference to medical needs.

Defendant police officers then brought this interlocutory appeal. Caprara and the City joined in the appeal. For the reasons that follow, we conclude that the defendant police officers were entitled to qualified immunity on plaintiff's claim of deliberate indifference to medical needs. We therefore reverse that portion of the district court's order denying the individual police officers' summary judgment motion. We dismiss the appeals filed by Caprara and the City because we lack jurisdiction to hear their claims.

I.

On April 24, 1987, Daniel Walczak was arrested on a grand theft larceny charge by officers of the Mayfield Heights Police Department. Walczak was taken to the Mayfield Heights City Jail and placed in a cell while he waited for bond to be set. Detective Roger Murray, one of the arresting officers, submitted an affidavit in which he stated that upon learning that bond had been set for Walczak, he went to Walczak's cell to inform him of the amount of the bond and to allow him to make a telephone call. He stated in his affidavit:

Upon arriving at Mr. Walczak's jail cell, I found him hanging by his neck from his socks which he had lodged in the hinge of his jail cell door. I informed the shift commander and requested the dispatcher to contact the Mayfield Heights Fire Department Rescue Squad for medical assistance. The Mayfield Heights Fire Department Rescue Squad was on the scene within minutes adminis-

---

tering emergency aid to Mr. Walczak. Mr. Walczak was subsequently taken to the Hillcrest Hospital for further emergency treatment and hospitalization.

At his deposition Murray testified that when he went into the jail, he opened the outer door to the cellblock, entered the cellblock, looked through a window in the inner cellblock door and "saw Daniel hanging." Thereupon, he "immediately made the decision to run out and get help." He estimated that "a minute" elapsed between the time he discovered Walczak hanging, and the time he got back into the cell with the paramedics and two other officers.

Harvey Yelsky, the Communications Officer on duty stated in deposition testimony that he observed Murray come down to the cellblock area, go through the security doors and "a minute or so, maybe less, he came out," indicated a prisoner was hanging, and said "get help." Yelsky stated he immediately called the paramedics. A call for medical assistance from the city jail was recorded in the fire department's log at 4:24 p.m. The paramedics arrived at 4:25 p.m. and were led into the cellblock by three officers, where Walczak was still hanging. As one of the paramedics attempted to cut Walczak down, the socks apparently gave way, and Walczak slumped to the floor. Walczak was not breathing at the time, nor was his heart beating. The paramedics immediately began to administer medical aid and were able to revive Walczak, who was then transported to a hospital. Walczak suffered permanent loss of mental and physical faculties caused by lack of oxygen, and is presently institutionalized.

## II.

■ Plaintiff has moved to dismiss this appeal on jurisdictional grounds. Ordinarily, denials of motions for summary judgment are not appealable. However, denials of summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Because the defendant police officers' summary judgment motion was denied based on qualified immunity, their interlocutory appeal is properly before this Court.

The City and Caprara also seek to invoke this Court's jurisdiction on issues other than qualified immunity relying on *Carlson v. Conklin,* 813 F.2d 769, 770–71 (6th Cir.1987), and *Foster v. Walsh,* 864 F.2d 416, 418 (6th Cir.1988). In *Carlson* and *Foster,* each court exercised appellate jurisdiction beyond the qualified immunity issue. However, in *Huron Valley Hosp., Inc. v. City of Pontiac,* 792 F.2d 563 (6th Cir.), *cert. denied sub. nom. Walker v. Huron Valley Hosp., Inc.,* 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), the court concluded it was not required to review other issues raised on appeal "simply because we review the qualified immunity issue." *Id.* at 568; *see also Birrell v. Brown,* 867 F.2d 956, 956 n. 1 (6th Cir. 1989). For the reasons articulated by the Supreme Court in *Abney v. United States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977), and consistent with the *Huron Valley* decision, we conclude that only the qualified immunity issue raised by defendant police officers is properly before this Court. We therefore decline to hear the appeal of the City and Caprara.

## III.

■ Qualified or "good faith" immunity is an affirmative defense that is available to government officials performing discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action.... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038 (citing *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39); *Yates v. City of Cleveland,* 941 F.2d 444, 446 (6th Cir.1991).

"A necessary concomitant to the determination of whether the constitutional right asserted by · a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In ruling on a summary judgment motion, a district court will consider the allegations put forth by the plaintiff, and "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. The United States Supreme Court has elaborated on what is meant by "clearly established,"

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

■ The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question. *Id.* Thereafter, the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct. *Id.* However,

> summary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the de-

fendant did acts that violate clearly established rights.... Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. In either event, the case will then proceed to trial, unless the defendant takes a successful interlocutory appeal on the issue of qualified immunity.

*Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (citations omitted). *Accord Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989).

■ To determine if the defendant police officers' actions violated any clearly established constitutional rights such that they would not be entitled to rely on qualified immunity, it is necessary for the Court to decide (1) whether there is a factual dispute on which the question of their immunity turns, and (2) what the state of the law was on April 24, 1987. Review of the denial of a qualified immunity claim is an issue of law, thus our review is *de novo. Yates,* 941 F.2d at 446 (citing *Eugene D. by and through Olivia D. v. Karman,* 889 F.2d 701, 706 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990)).

## IV.

### A.

The district court concluded that a jury question existed as to whether the police officers' failure to act by immediately taking Walczak down, as opposed to immediately calling for medical assistance, constituted a deliberate indifference to medical needs. We disagree. After carefully reviewing the record, we discern no factual dispute as to the conduct of the police officers when they discovered Walczak hanging. Thus, there was no question of fact for the jury. *Poe,* 853 F.2d at 426; *Brandenburg,* 882 F.2d at 215–16. The undisputed facts are that after Detective Murray went through the security doors and discovered Walczak hanging in his cell, he immediately ran to get assistance. He

shouted for Officer Yelsky to "get help" and Yelsky picked up the phone and immediately called the Fire Department Rescue Squad. A call from the city jail was recorded in the fire department's log at 4:24 p.m., and the paramedics arrived at 4:25 p.m. Three police officers then accompanied the paramedics into Walczak's cell and the paramedics began to administer medical care. It is on these facts that the district court was required to determine whether, in light of clearly established law, the police officers' conduct was contrary to the conduct reasonable officials would have taken. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038; *Yates,* 941 F.2d at 446.

We reject plaintiff's argument that a question of fact exists as to the amount of time that elapsed between the moment Walczak was discovered and when the police officers initiated steps to summon the paramedics. Plaintiff has come forward with no evidence to suggest that there was any delay in calling for the paramedics or in the arrival of the paramedics once Walczak was discovered.[1]

### B.

■■■ The general right of a prisoner to receive medical care was set out in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which provides that prison officials may not be deliberately indifferent to the medical needs of their prisoners.[2] This right also applies to pretrial detainees. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985). In *Fitzke v. Shappell,* 468 F.2d 1072 (6th Cir.1972), we held that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness" anyone who is incarcerated, "whether for a term of life.... or merely for the night to

'dry out' in the local drunk tank," has the due process right to adequate medical care. *Id.* at 1076. Four years later, in *Scharfenberger v. Wingo,* 542 F.2d 328 (6th Cir. 1976), we held "a prisoner's custodians cannot lawfully deny adequate medical care even in instances of deliberate self injury." *Id.* at 330. These cases establish that at the time the defendant police officers acted, the law in this circuit was "clearly established" that Walczak had a due process right to adequate medical care, even if his injuries were self-inflicted. *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).

In *Danese,* we considered whether a prisoners' right to medical care encompassed a situation where the prisoner announced that he was going to kill himself, but the police allegedly took no precautions to prevent the suicide. We held that:

> [T]he rights the district court cites as having been clearly established were not particularized rights as required by *Anderson* and, thus, were not sufficient to deny the defendants qualified immunity. The "right" that is truly at issue here is the right of a detainee to be screened correctly for suicidal tendencies and the right to have steps taken which would have prevented suicide. The general right to medical care, for example, is not sufficient to require a police officer to have known that he had to determine that *Danese* was seriously contemplating suicide and stop him from following through.

*Id.* at 1243–44.[3] Thus, as *Danese* instructs, the right asserted by the plaintiff must be "particularized" as opposed to a general right; and the generalized right of a prisoner to be free from deliberate indifference

---

1. While the record does not establish the precise time that Murray left his workstation upon receiving the Lyndhurst Municipal Court's call regarding Walczak's bail, there is no conflict as to how much time elapsed between the moment Murray first saw Walczak hanging and when he reacted by calling for assistance—Murray immediately ran to get help.

2. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary

and wanton infliction of pain....'" *Estelle v. Gamble,* 429 U.S. at 104–05, 97 S.Ct. at 291 (citation omitted).

3. The *Danese* court did, however, recognize that if a prisoner with a serious medical injury requested help and was ignored, such circumstances could give rise to a deliberate indifference claim. *Danese,* 875 F.2d at 1244.

cannot support a finding that there was a clearly established right to be protected from committing suicide. *Id.*

The "right" at issue in the instant appeal is the right of a pretrial detainee to be cut down by police officers when discovered hanging in a jail cell. Plaintiff contends Walczak was deprived of that right when the police officers called for the paramedics rather than cutting him down themselves. Thus, as a threshold question, we must decide whether there was a recognized constitutional right at the time of this incident that would have required the police officers to cut down Walczak themselves rather than call for medical assistance. *Siegert,* 111 S.Ct. at 1793. The inquiry must turn then to whether there is any case law dealing with the more particularized right that is at issue in this case. *Masters v. Crouch,* 872 F.2d 1248, 1251 (6th Cir.), *cert. denied sub. nom. Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989). No case has been brought to this Court's attention which recognizes a constitutional duty on the part of jail officials to immediately cut down a prisoner found hanging in his or her cell.[4] While we recognize that there is no requirement that we rely upon a case in which the "very action in question has previously been held unlawful," it is plaintiff's duty to establish, "in the light of pre-existing law" that the unlawfulness of the police officers' conduct was apparent. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Wegener,* 933 F.2d at 392.

Defendants acknowledge that Walczak did have a particularized right—the right to have medical assistance summoned immediately upon the police officers becoming aware that he was in need of immediate

medical care. Because medical care was summoned promptly, defendants assert that Walczak's constitutional rights were not violated. We agree. In *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the Court stated, "[w]hatever the standard may be, Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury." *Id.* at 245, 103 S.Ct. at 2983. Similarly, the court in *Maddox v. City of Los Angeles,* 792 F.2d 1408 (9th Cir.1986), recognized:

> The due process clause requires responsible governments and their agents to secure medical care for persons who have been injured while in police custody.... We have found no authority suggesting that the due process clause establishes an affirmative duty on the part of police officers to render CPR in any and all circumstances.... Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.

*Id.* at 1415 (citing *City of Revere,* 463 U.S. at 244–45, 103 S.Ct. at 2983). In *Tagstrom v. Enockson,* 857 F.2d 502 (8th Cir.1988), a suspect was injured after a high speed motorcycle chase. The officer on the scene called an ambulance, but did not render any further medical assistance. The court found that there was no constitutional violation. *Id.* at 504. The *Tagstrom* court stated:

**4.** Plaintiff's reliance on *Bass by Lewis v. Wallenstein,* 769 F.2d 1173 (7th Cir.1985), is not helpful. In *Bass* the evidence established that defendant, a prison physician, intentionally failed to respond to the emergency medical needs of a prisoner, and in fact was ordered to respond some ten to fifteen minutes after he was initially notified of the prisoner's distress. *Id.* at 1183. In contrast, the record in this case contains undisputed evidence that the police officers immediately summoned the paramedics upon seeing Walczak hanging in his cell. Likewise, plaintiff's reliance on *Estate of Cartwright v. City of Concord,* 618 F.Supp. 722 (N.D.Cal.1985),

*aff'd,* 856 F.2d 1437 (9th Cir.1988), does not convince the Court that Walczak possessed a clearly established right to be cut down. In *Cartwright,* the police officers did cut Cartwright down when he was discovered hanging in his cell, and then called the paramedics. The trial court rejected plaintiff's argument that "the fire department should have been called first, because of its resuscitation capabilities and its possibly faster response time," concluding the defendants' actions during the few intervening minutes between discovering Cartwright, and the arrival of the emergency crews was not deficient. 618 F.Supp. at 729.

**1098**

Enockson was in no way deliberately indifferent to Tagstrom's medical needs. It is undisputed that Enockson called for an ambulance for Tagstrom immediately upon seeing the accident and that the ambulance arrived within six minutes or less.

*Id.* at 503–04.

The record in this case clearly supports the conclusion that upon discovering Walczak hanging in his cell, the defendant police officers reacted immediately by calling for the paramedics, and that the paramedics arrived within minutes. The police officers did not intentionally deny or delay Walczak's access to medical care, and their actions certainly did not constitute the "unnecessary and wanton infliction of pain" necessary to establish deliberate indifference to medical needs. *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291.

### V.

For the reasons set forth above, we conclude that the district court erred in denying summary judgment on the issue of qualified immunity to the individual police officers with respect to plaintiff's claim of deliberate indifference to medical needs. We therefore REVERSE the district court's denial of summary judgment to the individual police officers and REMAND for entry of judgment consistent with this Court's opinion. We DISMISS the appeals filed by City of Mayfield Heights and Police Chief Caprara because we lack jurisdiction to hear their claims.[5]

---

**5.** Because we hold that the individual police officers are entitled to qualified immunity, we do not believe that any liability can be imposed upon the City or Caprara for negligent hiring and training. *See Danese v. Asman*, 875 F.2d at 1245; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, since we are dismissing their appeal on jurisdictional grounds, we need not decide this matter.