Rasheen **JABBAR–EL**, Plaintiff,

v.

John **SULLIVAN**, Defendant.

**Civ. A. No. 90–CV–72056–DT.**

United States District Court,
E.D. Michigan, S.D.

Nov. 30, 1992.

Daniel Manville, Detroit, MI, for plaintiff.

Mark Donnelly, Asst. Atty. Gen., for state of Mich., Lansing, MI, for defendant.

ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT UNDER DOCTRINE OF LACHES

HACKETT, District Judge.

Defendant filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b),

contending in part that plaintiff's complaint is barred by the doctrine of laches. The motion for summary judgment was referred to Magistrate Judge Virginia Morgan for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge submitted a report and recommendation that the court find plaintiff's complaint barred by the doctrine of laches or, in the alternative, that the court grant defendant's motion for summary judgment.

The court has reviewed the file, record, and magistrate judge's report and recommendation and accepts the magistrate judge's recommendation. Objections to that report which have been filed within the established time period have been considered. They are without merit.

IT IS ORDERED that the magistrate judge's report and recommendation relative to plaintiff's complaint being barred by the doctrine of laches is accepted as the findings and conclusions of this court.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed.

## REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

This matter is before the court on the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. Rule 56(b) with respect to plaintiff's amended complaint. Discovery has been conducted and is now closed. Plaintiff has responded to the motion. This case was formerly assigned to Magistrate Judge Cooke. Oral argument was held before the undersigned.

Plaintiff, Rasheen Jabbar–El, a/k/a Clarence Washington, a state prisoner who at all relevant times was confined at the Huron Valley Mens' Facility (HVMF) in Ypsilanti, Michigan, originally filed this civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff has been represented by counsel since November, 1990.[1] Plaintiff alleges in both his original complaint and in the amended complaint filed by counsel that defendant violated his eighth amendment right to be free from cruel and unusual punishment when defendant intentionally fired a shot from the guard post at HVMF.[2] Plaintiff seeks money damages.

Defendant is John Sullivan, a corrections officer with the Michigan Department of Corrections, who at all relevant times was employed at HVMF.

For the reasons stated in this report, it is recommended that the plaintiff's action be held barred by the doctrine of laches. If the court finds the action is not so barred, then it is recommended that summary judgment be granted.

### FACTS

On June 5, 1986, at HVMF, defendant Sullivan was working in Guard Tower No. 4. Prisoner Williams–Bey was noticed by guards to have a weapon in the yard and appeared to be attempting an escape. During this time, plaintiff was being escorted by Officer Sharon Hall from one building to another across the yard. Defendant fired his gun. One of the rounds fired by defendant struck the school building within two feet from where plaintiff and Officer Hall were standing. Neither were hit by the round fired. Defendant was subsequently disciplined for the improper discharge of his weapon.

In his original complaint, plaintiff alleged that "on 6–5–86 C/S Sharon Hall call in on her radio to all posts that she was escorting Jabbar–El to the inf [infirmary] and back with food trays, so all posts new (sic) where we were at all times. On our way back just as we got by the school we walk past the property room, then I and officer Hall stop and duck because of gun shots and one that hit the window right by us."

---

1. Plaintiff filed his complaint on July 13, 1990. On November 6, 1990, attorney Daniel Manville filed an appearance on behalf of plaintiff. (See Docket Entry No. 12)

2. Plaintiff originally sued Gerald Mixon and John Sullivan. Mixon was dismissed on November 27, 1991, by stipulation. Plaintiff's counsel filed an amended complaint with leave of court on December 9, 1991.

(Complaint p. 1) Plaintiff further alleged that "on 6–5–86 at approximately 11:45 a.m. Officer Sharon Hall called on the radio that she was escorting one resident # 111260 Jabbar–El to the infirmary with food trays." (Complaint p. 3)

Plaintiff alleged that defendant knew or should have known that he was violating department policies and procedure when he did not fire a warning shot into the ground." (Complaint p. 3) Plaintiff claims that he has bad dreams about the shooting. Plaintiff did not allege that he had any contact, good or bad, with defendant prior to June 5, 1986.

Plaintiff filed a grievance regarding the shooting on June 7, 1986. (See, Defendant's Exhibit 6) Plaintiff signed off on this grievance indicating that his concerns had been resolved. (*Id.*)

In his first amended complaint filed through counsel, plaintiff alleges that defendant intentionally and deliberately fired his weapon in plaintiff's direction. (Amended Complaint, paragraph 18) He further alleges that defendant fired this shot wantonly and maliciously with the intent to inflict emotional distress and the fear of death into plaintiff. (Amended Complaint, paragraph 19) For the first time, he claims that prior to June 5, 1986, defendant had engaged plaintiff in hostile confrontations. (Amended Complaint, paragraph 17)

Plaintiff also contends that on June 5, 1986, defendant had a clear view of the area in which plaintiff was being escorted by Officer Hall and that defendant had the aid of binoculars.

Plaintiff and defendant have submitted affidavits which will be discussed *infra*.

## LAW

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Supreme Court's decision in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), provides guidance. The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of plaintiff's case. *Id.* 477 U.S. at 324, 106 S.Ct. at 2554. Instead the Court said, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.;* see also, *Roby v. Center Companies*, 679 F.Supp. 664 (E.D.Mich. 1987).

In any Section 1983 action, the initial inquiry must focus on whether two essential elements are present: whether the conduct complained of was committed by a person acting under color of state law; and whether this conduct deprived the person of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Bacon v. Patera*, 772 F.2d 259, 263 (6th Cir.1985). Defendant does not dispute that he acted under color of state law.

Plaintiff claims that defendant subjected him to cruel and unusual punishment in violation of the eighth amendment by firing a weapon, hitting a building two feet in front of plaintiff.

### 1. *Qualified Immunity*

Defendant seeks dismissal of plaintiff's claims on a number of grounds. The first ground is the affirmative defense of qualified immunity. The availability of this de-

fense allows government officials to reasonably anticipate when their actions may give rise to liability for damages so that they can carry on their duties without fear of harassing litigation. *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Thus, government officials performing discretionary duties are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Restated this means that a defendant has "qualified immunity unless plaintiffs' 'rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Ramirez v. Webb,* 835 F.2d 1153, 1156 (6th Cir.1987) (quoting *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987)).

Whether qualified immunity attaches to an official's conduct is a purely legal question to be determined by the judge prior to trial. *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988) (citations omitted). To prevail against a claim of qualified immunity, the plaintiff must set forth a particular and clearly established violation. *Id.* at 650. Allegations of malice on the part of the defendant will not defeat the defense. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

This circuit has recently discussed the issue of qualified immunity in the context of a prisoner's right to receive medical care. *Rich v. City of Mayfield Heights,* 955 F.2d 1092 (6th Cir.1992) (decided 2/4/92). The court noted that the right asserted by plaintiff must be "particularized" as opposed to a general right. In that case, the court recognized that the generalized right of a prisoner to be free from deliberate indifference cannot support a finding that there was a clearly established right to be protected from committing suicide, citing *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir.1989), *cert. denied,*

494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990). The court held in *Rich* that the same generalized right was insufficient to prevail against a claim of qualified immunity for violation of the right of a pretrial detainee to be cut down by police officers when discovered hanging in a jail cell. The court stated:

> The inquiry must turn then to whether there is any case law dealing with the more particularized right that is at issue in this case. *Masters v. Crouch,* 872 F.2d 1248, 1251 (CA6) *cert. denied sub. nom., Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989). No case has been brought to this Court's attention which recognizes a constitutional duty on the part of the jail officials to immediately cut down a prisoner found hanging in his or her cell. [footnote omitted] While we recognize that there is no requirement that we rely upon a case in which the 'very action in question has previously been held unlawful,' it is plaintiff's duty to establish, 'in the light of pre-existing law' that the unlawfulness of the police officers' conduct was apparent. *Anderson [v. Creighton],* 483 U.S. [635] at 640, 107 S.Ct. [3034] at 3039 [97 L.Ed.2d 523 (1987)]; *Wegener [v. Covington],* 933 F.2d [390] at 392 [6th Cir.1991].

955 F.2d at 1097.

To determine if a defendant is entitled to qualified immunity, it is necessary for the court to decide (1) whether there is a factual dispute on which the question of immunity turns, and (2) what the state of the law was during the relevant time period.

In the instant case, there is no dispute that defendant fired a shot and that the shot struck a building within two feet of plaintiff. While there is a factual dispute as to defendant's state of mind at the time he fired, subjective intent of the defendant is not relevant to the qualified immunity analysis. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Long v. Norris,* 929 F.2d 1111, 1114–1115 (6th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991). The question of quali-

fied immunity turns on the "objective reasonableness" of the action, assessed in light of the legal rules that were clearly established at that time. *Harlow, supra.*

In the instant case, defendant discharged his weapon and the bullet narrowly missed plaintiff. Coinciding with this was a disturbance in the yard involving another inmate. Three shots were fired. Defendant and Gerald Mixon were charged with improper discharge of their weapons. (Plaintiff's Exhibit 5) An investigation was done by prison officials and both officers were reprimanded. A description of the events was prepared at the disciplinary conference. (Plaintiff's exhibit 4) The sequence of events was reported as follows:

1. Prisoner Williams–Bey # 169702 was removed from his room in Unit # 5 in order to be searched. The prisoner was escorted to the officers' station in Unit # 5. He refused to be searched.

2. Williams–Bey then ran out of Unit # 5, exiting the unit through the rear doors and entering the unit yard behind the unit. Staff pursued the prisoner into the yard.

3. Williams–Bey climbed the fence surrounding the unit yard and headed east (in the direction of the fieldhouse).

4. C/O Sullivan (stationed at Post # 4) and C/O Mixon (stationed at post # 3) fired warning rounds. C/O Sullivan's warning round was fired into the ground beneath his post.

5. Prisoner Williams–Bey then reversed his direction and began running west. He rounded Unit # 5 and turned south.

6. Prisoner Williams–Bey, who was being pursued by staff, withdrew a knife from his clothing, was ordered to surrender the knife, and threw it in the direction of unit # 4.

7. C/O Sullivan then fired another round from post # 4. This round traveled from the post and entered a window in the school building, shattering the window. C/O Sharon Hall was escorting another prisoner across the yard. She reported that she heard the round enter the window in the school building and that she and the prisoner were approximately 2' from the direct line between post # 4 and the point at which the round entered the window in the school building.

8. The prisoner was apprehended by staff and taken to housing unit # 1.

(Plaintiff's Exhibit # 4)

Upon investigation, defendant was found to have "wantonly fired a round across the yard, he endangered the lives of both C/O Hall and the prisoner she was escorting." (Plaintiff's Exhibit 4, p. 2) The report also indicates that defendant explained that he thought his second round went into the ground and that it must have ricocheted from the ground to hit the school building. (*Id.*) This was found to be not possible given the trajectory of the bullet. (*Id.*) Defendant also explained that he shot in response to an attempted escape by Williams–Bey. This was found to be absurd. The report was apparently prepared by Warden Borgert as his initials appear at the bottom. (*Id.*) In September, 1987, Warden Borgert reported to the Field Investigator of the Michigan Department of Corrections that defendant and Officer Mixon were found to have used excessive force in response to the June 5, 1986 incident and were disciplined. (Plaintiff's Exhibit 5)

In *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct 1078, 89 L.Ed.2d 251 (1986) (decided on March 4, 1986, three months before the incident), the Court decided the standard which governs a claim that prison officials subjected an inmate to cruel and unusual punishment by shooting him during the course of their attempt to quell a prison riot. The Court looked to the following factors: the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Id.* 475 U.S. at 320–21, 106 S.Ct. at 1085. The Court further held that "[F]rom such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tan-

tamount to a knowing willingness that it occur." *Id.*

"Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury."

*Id.*

The *Whitley* Court held that the evidence there established that the actual shooting was part and parcel of a good faith effort to restore prison security and did not violate the inmates' eighth amendment rights. 475 U.S. at 324–25, 106 S.Ct. at 1087.

The facts in this case, taken in a light most favorable to plaintiff, demonstrate that a disturbance was at hand when the first shot was fired by defendant from gun tower # 4 and that this shot deterred the inmate's path so that he turned around. (Plaintiff's Exhibit # 4, p. 1) The second shot was fired by defendant in the direction of plaintiff and Officer Hall, approximately 200 yards away and not near the disturbance. (*Id.*, p. 2) After the final shot, the prison staff subdued the inmate causing the disturbance. (*Id.*, p. 1) Defendant stated that he thought that he shot into the ground on his first and second shot. (Plaintiff's Exhibit # 4, p. 1) An investigation found that defendant's second shot was not necessary as (1) the inmate was not trying to escape because he was nowhere near the outer boundaries of the prison, and (2) the shot was not in response to safety concerns of other officers as prison staff were not in any danger because they were chasing the inmate. (Plaintiff's Exhibit # 4) However, there was no physical injury inflicted on either Officer Hall or plaintiff.

Defendant's contention that he is entitled to qualified immunity is ultimately a question for the jury. Government officials performing discretionary functions have a qualified immunity shielding them from liability for damages as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97

L.Ed.2d 523 (1987). Although this is purely a legal question to be decided by the court, a court may not be able to make a determination if the exact character of the "actions" that *Anderson* requires the court to consider is known. *Brandenburg v. Murphy,* 1991 WL 109374, *3, 1991 U.S.App. Lexis 13680, slip op. at star page 8–9 (6th Cir., decided 6/21/91) (J. Ryan) (unpublished opinion), citing *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989) (*Brandenburg* I). Therefore, the jury is the final arbiter of the claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.

Since a jury could find that there was no need for force, and could find no relationship between the shot and the attempted escape of Williams, a jury could infer that defendant's actions were not part of a good-faith effort to restore prison security. Therefore, because of the disputed factional issues, defendant's motion should not be granted on the grounds of qualified immunity.

## 2. Laches

Defendant next claims that the equitable doctrine of laches should preclude plaintiff's claim. This civil rights action is brought more than three years after the claim accrued. Such a claim would normally be time barred. See, M.C.L.A. § 600.-5805; *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). However, Michigan law also provides that the limitations period is tolled for persons like plaintiff who are imprisoned at the time the claim accrues. This state statutory tolling provision was held applicable to federal civil rights actions filed pursuant to 42 U.S.C. § 1983. *Hardin v. Straub,* 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). For prisoners facing lengthy terms of imprisonment, there is effectively no statute of limitations. Thus, plaintiff has filed within the statute of limitations only because of the fact that he is a prisoner. His case is filed beyond the presumptively applicable 3–year limitation period for members of the general public.

However, plaintiff is still subject to the common law doctrine of laches. That doctrine bars a claim not brought within a reasonable time of plaintiff's learning the allegedly true facts. Equity will not protect a party who through years of silence has created an impression of acquiescence that has led others to make substantial commitments. *Independent Bankers Assoc of America v. Heimann,* 627 F.2d 486, 488 (D.C.Cir.1980). The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim. The doctrine has been held applicable to civil rights claims. *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 74 (3rd Cir., 1986); *Cf., Leon v. Federal Reserve Bank,* 823 F.2d 928, 932 (6th Cir.1987), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360.

Under equitable principles, the statute of limitations applicable to analogous actions at law is used to create a "presumption of laches." *Tandy Corp. v. Malone and Hyde, Inc.,* 769 F.2d 362 (6th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). However, even periods less than the analogous statute of limitation may be grounds to invoke laches when there is unreasonable prejudicial conduct. *Id.* See discussion at pp. 365–366.

At oral argument, plaintiff's counsel argued that laches should not apply because the legislature had determined that prisoners should not be subject to any statute of limitations, and therefore, defendant as a state actor could not rely on the doctrine. This argument is not well grounded in logic. Defendant is not the State of Michigan or its legislature. Plaintiff has not brought his action against the State of Michigan, the Department of Corrections, or any state entity. He has sued one individual, Sullivan, to recover money for Sullivan's personal actions. This is a private lawsuit between private individuals. Actions of the state's law-making body cannot preclude an individual's right to raise this equitable defense. Sullivan has the same interests as any other private individual in not having stale claims raised against him. Therefore, he is entitled to rely on the doctrine.

To establish a successful laches defense, the defendant must show that the plaintiff was guilty of unreasonable delay prejudicial to the defendant. *Gardner v. Panama Railroad,* 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 809 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). The inquiry is two-fold: (1) lack of diligence by the plaintiff, and (2) the injurious reliance thereon by the defendant. *Goodman, supra,* at 804.

Here, plaintiff did not file his court action until more than four years after the incident and more than four years after he initiated his grievance. He dismissed his grievance and indicated that his concerns had been resolved.

Plaintiff is a frequent filer of § 1983 lawsuits. He has filed several other suits during his incarceration and has demonstrated that he is clearly aware of the legal process for vindicating alleged denials of his constitutional rights. See, *Jabbar–El v. Lorraine Barnes, et al.,* 83–CV–72196–DT (U.S.D.C., E.D.MI); *Jabbar–El v. Koehler,* 84–52663–CZ (Ingham County Circuit Court) (filed 8/27/84); *Jabbar–El v. Johnson,* 84–CV–73499–DT (U.S.D.C., E.D.MI); *Jabbar–El v. Robinson,* 88–CV–60096–AA (U.S.D.C., E.D.MI); *Jabbar–El v. Robinson,* 88–CV–70999–AA (U.S.D.C., E.D.MI); *Jabbar–El v. Deleeuw,* 88–CV–71585–DT (U.S.D.C., E.D.MI). Each of these actions involved plaintiff's assertion that correction department employees violated his constitutional rights. No reason has been raised to explain or excuse the delay in filing this claim.

Furthermore, defendant is prejudiced by this passage of time. Defendant states that he is unable to recall whether binoculars were available, and the records that could refresh his recollection have been destroyed.[3] In his amended complaint,

---

**3.** Plaintiff submitted an affidavit from a former corrections officer, Marty Washington, to the

effect that binoculars were available in the guard tower. However, at oral argument, de-

plaintiff raises issues of prior hostile confrontations with defendant (in order to meet the element of subjective intent), which incidents have never been raised in any form previously, not even in the original complaint, which are not documented or clearly described, and which are not now readily susceptible to investigation. Defendant states that he has· no recollection of any hostile confrontations with plaintiff. However, depositions indicate that plaintiff and defendant may have had previous altercations that could support plaintiff's allegations that defendant intended to harm him. See, C/O Burek's (formerly Hall) deposition, p. 18–19, 47; and plaintiff's deposition, p. 10–14. In Burek's deposition, the only evidence of defendant's interest with respect to the shooting is directed toward a dislike of Burek, not any hostility toward plaintiff. (Deposition, p. 19)

Plaintiff also testified that he has suffered psychological pain and suffering. Defendant argues that plaintiff's complaint of such harm is incredible because he did not complain of any psychological suffering until 1988 when he complained to health services that he was having bad dreams. While it is true that plaintiff need not suffer a "significant injury," under *Hudson v. McMillian*, —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), plaintiff's injury is nonetheless an important factor. "The absence of a serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*, —— U.S. at p. ——, 112 S.Ct. at p. 999.

Plaintiff submitted three requests for counseling regarding "bad dreams" which he claimed were the result of the shooting in June, 1986. (Plaintiff's Exhibits 7, 8, and 9) Two are dated in 1988 and one is not dated. Despite his awareness of injury in 1988, he did not file his complaint for at least two more years. Such a gap in time suggests that plaintiff's injury was not serious. There are no medical records in existence regarding treatment for plaintiff's complaints or the reason for his "bad dreams."

The unavailability of the witnesses, the destruction of records, and the absence of contemporaneous evidence are clearly prejudicial. The investigating officer on the shooting incident, former Assistant Deputy Warden Elkins, is no longer employed by MDOC and is not residing in the state.

Defendant has clearly demonstrated both the necessary prejudice and unreasonable delay. Thus, this action should be dismissed as barred by the doctrine of laches.

### 3. *The Merits*

Finally, defendant claims that there are no genuine issues of material fact and that the court may dismiss this case as a matter of law. The eighth amendment prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court first acknowledged that the provision could be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment. Later, in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Court articulated the standard to be applied in determining eighth amendment claims and held that "it is obduracy and wantonness, not inadvertence or error in good faith" that characterizes prohibited conduct. *Id.* at 319, 106 S.Ct. at 1084. Such a standard mandates an inquiry into a prison official's state of mind. *Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The eighth amendment mandates a finding of intent for claims of cruel and unusual punishment. *Wilson*, —— U.S. at —— ——, 111 S.Ct. at 2324–2325. The court

---

fendant's counsel advised the court that the affiant was, in fact, plaintiff's wife Marty Washington. This individual is, however, has been previously referred to as Georjeanna or Georgina. (Deposition of Plaintiff, pp. 41, 45) She is named on defendant's witness list filed in this case as Georgina M. Jabbar–El, and neither the affidavit nor plaintiff's counsel ever made the court aware of the fact that Marty Washington was Georgina Jabbar–El, nor that the affiant was plaintiff's wife. This obvious attempt to mislead the court is something which should be weighed against plaintiff in evaluating the application of the equitable defense to plaintiff's case. Moreover, the marriage and spousal privilege now in existence, also prejudice defendant.

stated: "[I]f the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.* The court concluded that the state of mind required in cases challenging the conditions of confinement was the same as that set forth in *Estelle v. Gamble, supra,* that of "deliberate indifference." *Id.* —— U.S. at ——, 111 S.Ct. at 2327.

The Court held that *Whitley* teaches that "wantonness" of conduct depends not on its effect on the prisoner, but on the constraints facing the official. *Id.* —— U.S. at ——, 111 S.Ct. at 2326. Therefore, in determining whether a prisoner's claim rises to this level, the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of the injury inflicted should be considered. However, a claim of cruel and unusual punishment need not be predicated on a "serious" injury. *Hudson v. McMillian,* —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In *Hudson,* a Louisiana inmate brought a § 1983 claim against two prison guards who allegedly beat him up. Hudson testified that he suffered minor bruises, facial swelling, loosened teeth and a cracked dental plate. The Court rejected respondent's contention that a significant injury is mandated by *Wilson v. Seiter, supra.* The Court held that the *Wilson* intent component was responsive to "contemporary standards of decency," i.e., claims about conditions of confinement, *Wilson,* and claims regarding prison guard's response to an inmate riot, *Whitley.* The Court noted the injury is relevant but that cruel and unusual punishment must be viewed from the perspective of "evolving standards of decency...." *Id.* at ——, 112 S.Ct. at 1000. The Court noted that in *Estelle,* it held that extreme deprivations are required to make out a conditions of confinement claim because routine discomfort is "part of the penalty...." *Id.* Similarly, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an eighth amendment violation. *Id.,* citing *Wilson, supra.*

In *Hudson,* the Court held that "[i]n the excessive force context, society's expectations are different." *Id.* "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.,* citing *Whitley, supra,* 475 U.S. at 327, 106 S.Ct. at 1088. To require a significant injury for an eighth amendment claim "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." (*Id.*)

The Court noted, however, that "not every malevolent touch by a prison guard gives rise to a federal cause of action." —— U.S. at ——, 112 S.Ct. at 1000, citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973).

Here, plaintiff was not touched or physically injured by defendant. Plaintiff made no allegations of even psychological injury until two years later. He has no documents and filed no grievances as to any of his now recently alleged prior confrontations with defendant. He has no evidence to support his conclusion that his "bad dreams" are the result of this shooting. Plaintiff attempts to elevate a prison finding of misconduct against Sullivan into a violation of the eighth amendment, entitling plaintiff to money damages. This should not be allowed by this court.

Judicial review of discrete incidents such as this must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official from being subjected to unreasonable *post hoc* second guessing. *Whitley,* 475 U.S. at 318–322, 106 S.Ct. at 1084–1085. No more than second guessing could take place here.

Accordingly, it is recommended that defendant's motion for summary judgment be granted on the grounds that plaintiff's action is barred by laches. If the court declines to accept this procedural bar, defendant's motion for summary judgment should be granted.

The parties to this action may object to and seek review of this Report and Recom-

mendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: Oct. 23, 1992