25 F.3d 1050
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John James TRIBELL, Plaintiff-Appellee,
v.
David G. MILLS, Warden; Norma Jean Eggers; Gordon R.
Miler, Counselor, Defendants-Appellants,
Jim Morrow, Counselor; Donley Shillings, Counselor, Defendants.
 No. 93-5399.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1994.
 
 Before: MARTIN and JONES, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The district court held that John James Tribell's due process rights were violated by his prolonged administrative segregation after a knife was found hidden in his cell. We affirm the district court's due process determination, reverse the district court's good-time credit determination, and remand this action to the district court to determine monetary damages, if any, to be awarded to Tribell.
 
 I.
 
 2
 On Friday, December 8, 1989, Morgan County Regional Correctional Facility officers, acting on an anonymous tip, found a knife hidden in plaintiff-appellee John James Tribell's cell. Prison officials immediately placed Tribell in administrative segregation (commonly referred to as "the hole") pending investigation of the incident.
 
 
 3
 On December 15, 1989, prison officials charged Tribell with possession of a deadly weapon and ordered that he remain segregated pending a hearing. Though Tribell's disciplinary hearing was scheduled for December 18, 1989, the disciplinary board postponed the hearing and, on December 28, 1989, the charges against Tribell were dismissed. Nevertheless, Tribell was reclassified on December 20, 1989, and was transferred from the minimum security facility to a medium security facility on or about January 1, 1990.
 
 
 4
 On December 6, 1990, Tribell filed this 42 U.S.C. Sec. 1983 action alleging a violation of his due process rights under the Fourteenth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment.[1] Specifically, Tribell claimed that the defendants violated his rights by: removing him from the general population without due process; transferring him to a medium security facility; and, discontinuing his educational studies following his transfer to the medium security facility. Tribell sought injunctive and declaratory relief, as well as compensatory and punitive damages.
 
 
 5
 The district court subsequently dismissed portions of Tribell's action and ordered that an amended complaint be filed:
 
 
 6
 The Constitution does not provide the plaintiff with the right to be confined in a particular facility. The plaintiff did not have a constitutionally protected right to remain in a minimum security compound as opposed to a medium security compound.
 
 
 7
 ... It is also well settled that a prisoner has no inherent constitutional right to enjoy a particular security classification, and there is no constitutional right to vocational or educational programs in prisons.
 
 
 8
 Accordingly, for the reasons expressed above, ... the above listed claims of the plaintiff are hereby DISMISSED sua sponte as frivolous [pursuant] to 28 U.S.C. Sec. 1915(d).
 
 
 9
 However, the plaintiff also argues that he has a "protectable liberty interest created by TDOC policies in not being segregated except by due process of law and the Warden never properly segregated the plaintiff per policy and such is a violation of due process of law protected by the United States Constitution." ... [T]he plaintiff is given fifteen (15) days to amend his complaint to make specific factual allegations that would indicate how each defendant violated his constitutional rights, which constitutional rights each defendant violated, and the damages he suffered as a result of these constitutional violations....
 
 
 10
 Joint Appendix at 22-24 (citations omitted).
 
 
 11
 On December 21, 1990, Tribell filed his amended complaint in which he claimed that: the defendants failed to comply with Tennessee Department of Correction ("TDOC") policies; the defendants violated Tennessee's Uniform Disciplinary Procedures Secs. 502.01(VI)(C)(3)(d) and 404.10(VI)(A)(1) by segregating him for twenty-one days; the defendants forced him to accept his security reclassification; and, the defendants subjected him to cruel and unusual punishment by keeping him in "punitive segregation" for twenty-one days without due process. In response, the defendants-appellants admit that Tribell was held in segregation for more than twenty days, that "no internal affairs investigation was conducted pursuant to TDOC policy," Appellants' Brief at 11, and that "all documents concerning the charge of possession of a deadly weapon should have been removed from plaintiff's institutional file pursuant to TDOC policy." Id.
 
 
 12
 On December 27, 1990, the district court dismissed the claims against defendants Shillings and Morrow. The remaining defendants subsequently moved to dismiss the claims against them or, in the alternative, for summary judgment. On April 29, 1992, Tribell filed a motion to expunge his institutional record of all references to the knife charge.[2] On November 5, 1992, Tribell was released on parole. On February 10, 1993, the district court: denied the defendants' motions; granted Tribell's motion; ordered that Tribell's institutional record be expunged of the knife charge; ordered that Tribell's good-time credits be restored; and, dismissed Tribell's action:
 
 
 13
 It seems clear that the plaintiff was properly placed in segregation pending an investigation into the fact that a knife was found in his bedding; that no internal affairs investigation followed this incident; that this failure to investigate the charge for more than 81 hours violated TDOC Policy No. 502.01(VI)(C)(3)(d); that, despite this, plaintiff was charged with possession of a deadly weapon; that, pursuant to TDOC Policy No. 502.01(VI)(A)(3), the disciplinary board should have convened to consider this charge within 72 hours; that the first hearing on this charge was continued at the request of the disciplinary board because the charging officer was not present; that this continuance was a violation of the regulations; that the disciplinary charge should have been dismissed; that the plaintiff remained in segregation eleven days longer than he should have; and that the defendants improperly allowed this unresolved charge to remain in the plaintiff's file.
 
 
 14
 There is no question that the plaintiff has stated a claim for a technical due process violation and that summary judgment for the defendants would be inappropriate.
 
 
 15
 Despite this, the Court sees no reason to bring this action to trial.... The main harm suffered by the plaintiff stems from the retention of the institutional record of the unresolved knife charge and his loss of good time credits during his improper confinement.
 
 
 16
 Accordingly judgment is here ENTERED in favor of the plaintiff. The Court FINDS that his due process rights were violated by his prolonged incarceration on the unresolved knife charge and ORDERS that his institutional record be expunged of any reference to the charge. The Court also ORDERS that any good time credits lost by the plaintiff as a result of this incident be restored to him.
 
 
 17
 District Court's February 10, 1993 Order at 3-4.
 
 
 18
 Mills, Eggers and Miler timely appealed.
 
 II.
 Due Process Violations
 
 19
 Though the due process clause does not guarantee a right to be part of the general prison population, state regulations "may create a liberty interest protected by the Due Process Clause," Hewitt v. Helms, 459 U.S. 460, 469 (1983), by using "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed, and that administrative segregation will not occur absent specified substantive predicates[.]" Id. at 471-72 (citation omitted).
 
 
 20
 Tennessee's Administrative Policies and Procedures governing the department of corrections provide (in relevant part):
 
 
 21
 When an alleged rule violation is reported, an appropriate investigation shall be initiated within 24 hours of the time the violation is reported and shall be completed without unreasonable delays. Any circumstances that delay the investigation shall be documented on the disciplinary report.
 
 
 22
 An inmate shall not be held in segregation pending investigation for more than eighteen (18) clock hours without the matter being reviewed by the warden or his/her associate warden/captain and a finding made by that person that probable cause exists to suspect that the inmate committed the infraction. The warden or associate warden/captain must sign a report stating that conclusion. No inmate may be held for more than seven (7) calendar days pending investigation.
 
 
 23
 Immediately upon conclusion of the investigation, the inmate shall be charged with an infraction or released from segregation. Procedures specified for notifying the inmate of the charges shall be followed. The time limit within which the disciplinary board must convene ... shall be measured from the time when the investigation is completed and the inmate is charged with the violation.
 
 
 24
 TDOC Policy No. 502.01(VI)(C)(3)(d).
 
 
 25
 Though Tennessee's administrative segregation regulations use the mandatory language noted in Hewitt, "Hewitt makes it clear ... that the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law, and that minimal process is required for segregation in the prison context because prison officials must be accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order[.]' " Black v. Parke, 4 F.3d 442, 447 (6th Cir.1993) (citations omitted). "Prison officials are 'obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation.' " Id. (citation omitted). "However, administrative segregation may not be used as 'pretext for indefinite confinement of an inmate.' " Id. at 448 (citation omitted). "Therefore, '[p]rison officials must engage in some sort of periodic review of the confinement of such inmates.' " Id. (citation omitted) (brackets in original). Accordingly, Tribell "was entitled to 1) an 'informal, nonadversary review' of the information supporting his segregation within a 'reasonable time,' 2) an opportunity to respond in writing or in person, and 3) periodic review of his confinement to assure that the confinement was not pretextual." Id. (citation omitted).
 
 
 26
 Tribell was administratively segregated for more than twenty days without a hearing, then transferred to a medium security facility after the charges against him were dismissed. Because the appellants failed to periodically review Tribell's administrative segregation, we conclude that Tribell's due process rights were violated by his prolonged segregation. Accordingly, we must now consider the appellants' qualified immunity claim.[3]
 
 Qualified Immunity
 
 27
 In Rich v. City of Mayfield Heights, 955 F.2d 1092 (6th Cir.1992), this court addressed the burden of proof in qualified immunity cases:
 
 
 28
 [Though] [t]he ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity[,] [d]efendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question. Thereafter, the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct. However, "summary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.... Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. In either event, the case will then proceed to trial, unless the defendant takes a successful interlocutory appeal on the issue of qualified immunity.
 
 
 29
 Id. at 1095 (citations omitted). See generally Washington v. Newsom, 977 F.2d 991, 996 (6th Cir.1992) ("In light of the defendants' motion for summary judgment based upon claims of qualified immunity, we have resolved, for purposes of our decision, all reasonable inferences in favor of the non-movant plaintiff who opposes the motion."), cert. denied, 113 S.Ct. 1848 (1993).
 
 
 30
 Summary judgment is appropriate when the evidence, taken in the light most favorable to the non-moving party, demonstrates that there are no genuine issues of material fact left for resolution at trial, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Review of the district court's qualified immunity decision is de novo." Newsom, 977 F.2d at 993.
 
 
 31
 "To successfully state a claim under 42 U.S.C. Sec. 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir.1992) (citation omitted). Government officials performing discretionary functions are generally shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known:
 
 
 32
 [G]overnment officials performing discretionary functions [have] qualified immunity ... shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken[.]
 
 
 33
 ....
 
 
 34
 [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right....
 
 
 35
 Anderson v. Creighton, 483 U.S. 635, 638-40 (1987) (citations omitted). See also Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir.1991) ("To find that a clearly established right exists, the district court must find binding precedent by the Supreme Court, this court, the highest court in the state in which the action arose, or itself, so holding.").
 
 
 36
 Because the appellants failed to establish that they were acting within the scope of their discretionary authority when they segregated Tribell from the general prison population for more than twenty days without a hearing (in violation of rights clearly established by Hewitt ), the appellants are not immune from Tribell's 42 U.S.C. Sec. 1983 action.
 
 Injunctive Relief
 
 37
 The appellants claim that "the District Court erred in awarding plaintiff injunctive relief in the form of requiring the restoration of ... "good time" credits plaintiff may have been denied as a result of his confinement in segregation." Appellants' Brief at 28-29. We agree.
 
 
 38
 "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriquez, 411 U.S. 475, 500 (1973). Because Tribell seeks both equitable and monetary relief, we may entertain his claims challenging the conditions of his confinement, see id. at 494 ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies."), but may not entertain his challenge to the length of his confinement. See Id. at 499 n. 14 ("If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim ... is cognizable only in federal habeas corpus, with its attendant requirement of exhaustion of state remedies."). See also Wolff v. McDonnell, 418 U.S. 539, 554-55 (1974) ("The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under Preiser. But the complaint also sought damages; and Preiser expressly contemplated that claims properly brought under Sec. 1983 could go forward while actual restoration of good-time credits is sought in state proceedings.... We therefore conclude that it was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled."). Accordingly, the district court erred by restoring Tribell's good-time credits.[4]
 
 III.
 
 39
 We AFFIRM the district court's due process determination, REVERSE the district court's good-time credit determination, and REMAND this action to the district court to determine monetary damages, if any, to be awarded to Tribell.
 
 
 
 [1]
 The defendants-appellants are Warden David Mills, Counselor Norma Jean Eggers and Counselor Gordon R. Miler. The remaining defendants (who are no longer part of this action) are Counselor Jim Morrow and Inmate Relation Coordinator Donley Shillings. These individuals were all employed at the Morgan County Regional Correctional Facility during the relevant time period and were named in both their individual and official capacities
 
 
 [2]
 The district court construed Tribell's motion as a motion for partial summary judgment
 
 
 [3]
 Pursuant to Carlson v. Conklin, 813 F.2d 769 (6th Cir.1987), we must first decide whether a viable section 1983 claim exists before addressing the issue of qualified immunity
 
 
 [4]
 We agree, however, with the district court's determination that Tribell's institutional record must be expunged of all references to the knife charge because the defendants ultimately dismissed the charge