Robert O. DAUGHENBAUGH, Plaintiff,

v.

CITY OF TIFFIN, et al., Defendants.

No. 3:96CV7226.

United States District Court,
N.D. Ohio,
Western Division.

Dec. 30, 1996.

Zach Zunshine, Law Offices of Zach Zunshine, Columbus, OH, for Robert O. Daughenbaugh.

Teresa L. Grigsby, Joan C. Szuberla, Spengler & Nathanson, Toledo, OH, for City of Tiffin, Michelle Craig, Charles W. Boyer.

Mark D. Landes, Isaac, Brant, Ledman & Teetor, Columbus, OH, for James Jarrett.

### Memorandum & Order

CARR, District Judge.

This is a civil rights case in which plaintiff claims that his rights under the Fourth Amendment were violated by Michelle Craig and Charles Boyer, City of Tiffin, Ohio, police officers and James Jarrett, a juvenile probation officer for Seneca County, Ohio. Plaintiff also asserts a state law claim of intentional infliction of emotional distress. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

All parties have filed motions for summary judgment. (Docs. 34, 35, 36). For the reasons that follow, defendants' motions shall be granted, and plaintiff's motion shall be overruled.

On May 24, 1994, Mike Hall was arrested for burglaries from garages in the Tiffin area. On being interviewed by Officers Craig and Boyer in the presence of P.O. Jarrett, Hall confessed. He told the officers that, unbeknownst to the plaintiff, Robert O. Daughenbaugh, he had placed some of the stolen items in plaintiff's garage. All three law enforcement officers—along with Hall— went to plaintiff's residence to investigate further.

On arriving at plaintiff's house, Officer Craig and P.O. Jarrett went to the front door

and knocked; there being no answer, they went to a back door and knocked again. Still, there was no response. According to the officers, they were able "upon exiting the driver's side and passenger's side door," to see into the garage in which, according to Hall, the stolen items were located. (Doc. 50 at 2, 13). The officers allegedly saw the stolen items in plain view in the garage, entered the garage, and retrieved the stolen items.[1] Defendants did not act pursuant to a valid warrant, nor did plaintiff personally consent to the search at any point in time.

The garage is about 80 to 90 yards from the street and about 50 to 60 yards away from plaintiff's residence. A driveway leads from the street to a carport next to the residence, and then continues straight toward the garage. The door to the garage, having a broken spring, was open at the time of the search. Plaintiff used the garage to store his lawnmower, a few gas cans, and extension cords; otherwise plaintiff used the garage sparingly and "did not go there much." (Doc. 43 at 5 n. 4). He did not park his car in the garage nor did he use the garage for any sort of daily activity. The garage door always remained open during the summer months and was closed only during the winter. Finally, the garage "was never in good condition" as evidenced by a dilapidated roof and spray paint on the walls. (Doc. 36 at 5). Since the time of the defendants' visit, plaintiff has removed the roof of the garage and plans to "tear the garage down." (*Id.*).

Looking at the facts in a light most favorable to plaintiff for purposes of this opinion, I conclude that, on the basis of plaintiff's photographs, the items in the garage were not visible from the carport (*i.e.*, from a vantage point next to the rear of the plaintiff's residence). I conclude, further, that the officers, to see the items, had to walk to the rear of the property in the direction of the garage.

At some point during this walk toward the garage, the items became visible. Plaintiff claims that defendants' warrantless entry into his garage violated the Fourth Amendment. The crucial question, then, is whether this "search" falls under the purview of the Fourth Amendment, and, if so, whether the search comes within a recognized exception to the Fourth Amendment.

Plaintiff's complaint uses the allegedly unconstitutional search as the basis for three claims: 1) the defendant officers[2] violated 42 U.S.C. § 1983; 2) the City of Tiffin maintained a "policy, practice, or custom" of condoning or encouraging officers to engage in warrantless searches and seizures; and 3) the above actions constitute an intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages against the three officers and the City of Tiffin.

In response, defendants have moved for summary judgment, contending that plaintiff has not set forth a prima facie § 1983 violation and, in any event, they are entitled to a qualified immunity defense. Plaintiff also has moved for summary judgment, alleging that he is entitled to judgment as a matter of law on the facts as stated. For the. following reasons, I agree with defendants that a prima facie § 1983 case has not been presented, and even if a § 1983 claim exists, defendants are entitled to qualified immunity. Furthermore, I conclude that plaintiff has not shown a basis for holding the City of Tiffin liable under § 1983.

### Individual Liability Under Section 1983

■ Defendants move for summary judgment contending, *inter alia*, that plaintiff has not been deprived of a constitutionally or federally protected interest or right. I agree. Because no Fourth Amendment violation occurred at plaintiff's residence of

---

1. Plaintiff claims that "individual police officers removed items of property from the garage and elsewhere on the premises." Plaintiff does not, however, specifically allege from where—besides the garage—defendants removed property. Without knowing specifically from where else the defendants removed property, it is impossible to undertake a Fourth Amendment analysis of whether such a removal amounted to an unconstitutional act.

2. Although plaintiff has sued the defendant officers in their "official" as well as their "individual" capacities, he does not seek prospective injunctive or declaratory relief against defendants acting in their "official" capacities.

plaintiff on May 24, 1994, the § 1983 claim against the defendant officers must fail.

Plaintiff's federal claims are based upon 42 U.S.C. § 1983 which declares:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or, causes to be subjected, any citizens of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress....

At its core § 1983 does not create any substantive rights; rather, it is a remedial statute designed to redress the violation of federal and constitutional rights created elsewhere. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 616–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979); *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir.1984).

■ To make out a prima facie § 1983 claim, a plaintiff must establish two elements: 1) there must be conduct by someone acting under color of state law; and 2) this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Because defendants do not contest the "acting under color of state law" prong, plaintiff in this case need only demonstrate how defendants' conduct deprived him of a constitutional right.[3] Thus, plaintiff can recover under § 1983 only after first identifying a specific constitutional right contravened by the defendants' actions. Toward this end, plaintiff alleges that defendants Craig, Boyer, and Jarrett violated his Fourth Amendment rights as incorporated against the state through the Fourteenth Amendment. *See*

*Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963) (the Fourth Amendment is incorporated against the States pursuant to the Fourteenth Amendment).

■ Plaintiff claims that the search at his residence on May 24, 1994 violated the Fourth Amendment. I disagree: because the area searched was not part of the "curtilage" of his home, the Fourth Amendment does not apply to the actions of the officers in this case. Rather, the "search" of the garage was an "open field" search, as to which the Fourth Amendment provides no protection.

■ A threshold question is whether the officers were lawfully on the plaintiff's premises in the first place. The officers could lawfully go onto the plaintiff's property in the course of their investigation of Hall and his activities in order to obtain consent to search the premises.[4] *See, e.g., United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

■ Having determined that the officers could lawfully proceed to plaintiff's residence to investigate a lead and attempt to procure consent prior to a search, the next question is whether they could also lawfully walk toward the garage. Under the specific circumstances of this case, I conclude the garage was not part of the curtilage of plaintiff's residence, and therefore not subject to the restrictions imposed by the Fourth Amendment.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

---

**3.** There is no claim that defendants violated any other of plaintiff's rights except his Fourth Amendment right to be free from unconstitutional searches and seizures.

**4.** Plaintiff does not challenge the officers' lawful right to proceed to plaintiff's residence in the course of their investigation. Although plaintiff claims the officers "could have called the plain-

tiff's listed telephone number and, if anyone answered, they could have, without identifying themselves, hanged up or asked for Mr. Smith, pretending they dialed the wrong number," (Doc. 54 at 2 n. 2), he cannot assert that failing to make such a "prank call" was unlawful in any way.

searched, and the persons or things to be seized.

The "open field" doctrine, however, recognizes that "an open field is neither a 'house' nor an 'effect,' and, therefore, 'the government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment.'" *United States v. Dunn,* 480 U.S. 294, 303–04, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987) (*quoting Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984)). Open fields "are protected neither under the text of the Fourth Amendment nor under the conception of the Amendment ... as protecting those areas in which individuals have a 'reasonable expectation of privacy.'" *United States v. Pace,* 955 F.2d 270, 274 (5th Cir.1992) (*quoting Oliver,* 466 U.S. at 176–79, 104 S.Ct. at 1740–42). An open field intrusion does not "infringe[ ] upon the personal and societal values protected by the Fourth Amendment." *Oliver,* 466 U.S. at 182–83, 104 S.Ct. at 1743–44. An "open field," furthermore, "may include an unoccupied or undeveloped area outside of the curtilage [and] ... need be neither 'open' nor a 'field' as those terms are used in common speech." *Id.* at 180 n. 11, 104 S.Ct. at 1742 n. 11. In sum, "courts have extended Fourth Amendment protection to the curtilage" of a residence, but not areas outside of the curtilage. *Id.* at 180, 104 S.Ct. at 1742.

■ The Supreme Court has provided a four-factor analysis to assist in determining whether a particular building or area is within the curtilage of a residence. "Curtilage questions," according to the Supreme Court

> should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987).

Combining these factors does not produce "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all

extent-of-curtilage questions," but these factors are "useful analytical tools" that "bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 301, 107 S.Ct. at 1140.

In this case, I conclude that plaintiff's garage was not "so intimately tied to the home itself" so as to fall under the "umbrella of Fourth Amendment protection." First, the garage was a self-contained structure that stood fifty or sixty yards from the back of the house, much like the barn in *Dunn* which was located sixty yards from the house. As in *Dunn,* the "substantial" distance between plaintiff's house and garage "supports no inference that the [garage] should be treated as an adjunct of the house." 480 U.S. at 302. Second, no artificial enclosure (such as a fence) surrounded the home and garage. Plaintiff notes that the house is "protected by a natural enclosure consisting of a river, tall trees, and shrubbery," (Doc. 43 at 6), but this enclosure does not significantly demonstrate that the garage is "part and parcel of the house." *Id.*

Third, it is "especially significant" that the nature of the uses to which the garage was put cannot be characterized as "intimate activities of the home." *Id.* Storage of a lawn mower, gas cans, and extension cords are not readily "associated with the activities and privacies of domestic life." *Id.* Plaintiff did not park his car in the garage or carry on much—if any—activity in the garage. Furthermore, by looking at the condition of the garage, no individual could reasonably conclude that the area in question was "treated as the home itself." *Dunn,* 480 U.S. at 300, 107 S.Ct. at 1139. The garage had a broken garage door, side door, and side door window, dilapidated roof, and spray painted walls. Plaintiff himself characterized the garage as in not very good condition and the garage door, because the spring was broken, remained completely open during the warm months of the year.

Fourth, plaintiff himself took no affirmative acts to protect the garage from observation by others. Granted, the surrounding

trees and river may have provided natural protection from outside observers, but plaintiff left the door completely open and accessible for months on end. His actions—or rather inaction—did very little to protect the garage from outside observation and access, as witnessed by Hall placing stolen property in the garage without plaintiff's knowledge or permission.

By its distance, location, use, and lack of affirmative protection, I conclude that the garage was separate and apart from the residence and the normal residential activities which are protected by the Fourth Amendment against warrantless entry. The garage was not so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection.[5]

Having determined that the garage was not part of the curtilage, it follows that the officers could approach it and observe the interior through the open garage door. The fact that the officers may have crossed an area within the curtilage to make such observations is irrelevant. As stated by one Circuit Court "under *Dunn* ... it does not matter that officers first trespass upon property that is obviously curtilage ... while investigating a tip, as long as the incrimina-

ting observations themselves take place outside the protected curtilage. The whole issue, then, boils down to whether or not the area in question is curtilage." *United States v. Traynor,* 990 F.2d 1153, 1157 (9th Cir. 1993). Thus, even if the officers crossed private areas within in the curtilage to reach the garage, what matters is that the garage is outside of the curtilage where the protections of the Fourth Amendment do not attach. Any observations made thereafter cannot be considered part of an unconstitutional search.

After observing the stolen items, the officers entered the garage to retrieve those items.[6] At this point, the final inquiry is whether the officers could seize that property without a warrant or consent. Because the Fourth Amendment does not apply to areas outside the curtilage of a residence, no constitutional violation arose when the officers seized the property from the garage that Hall identified as stolen.[7]

In sum, this officer's actions in question involved a search of a structure that was not part of the curtilage. Such action does not constitute a "search" for Fourth Amendment purposes.[8] Because there was no unconstitu-

---

5. Without citing any supporting cases, plaintiff claims that "[i]t is clear in general that the garage used as a storage area harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life." (Doc. 43 at 6). I disagree and independent research has uncovered several cases to the contrary. *See, e.g., United States v. Brady,* 993 F.2d 177, 178 (9th Cir.1993) (outbuilding 45 feet from house is not within the curtilage); *United States v. Traynor,* 990 F.2d 1153, 1158 (9th Cir.1993) (outbuilding on defendant's property 70–75 feet from the home was not protected within the curtilage).

6. Separately, I conclude that there is no evidence in the record to show that P.O. Jarrett entered the plaintiff's garage: he denies that he did so, and none of the other witnesses contradict that denial. Hall testified that he saw Jarrett with one of the stolen items retrieved from the garage—but he did not testify that he saw Jarrett enter the garage to recover that item. In the face of Jarrett's unequivocal denial, there is insufficient evidence to support a jury verdict to show that he even entered the garage. On that ground alone, Jarrett is entitled to summary judgment.

7. The seizure of the allegedly stolen property from plaintiff's garage also comports with the

"plain view" doctrine. In order to invoke the plain view doctrine, three prerequisites must be met: 1) the officer cannot violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the item must be in plain view with its incriminating character immediately apparent; and 3) the officer must have a lawful right of access to the object itself. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990).

In this case, the officers did not violate the Fourth Amendment in arriving at the garage because the garage was outside the curtilage. Next, the property in the garage could be plainly viewed and its incriminating character was apparent because of Hall's description and confirmation of the stolen property. Finally, standing outside the curtilage, the garage was essentially part of an "open field" wherein the officers had a lawful right of access to the garage.

8. I disagree with the defendants, however, with regard to whether their search of and entry into the garage was permissible under an "exigent circumstances" exception the Fourth Amendment. If the officers chose to pursue a warrant, the premises could have been secured, a hand-

tional deprivation in this case, plaintiff fails to set forth a prima facie § 1983 case, and officers Craig, Boyle and Jarrett are entitled to summary judgment.

### Qualified Immunity

 Even if the defendants in this case violated plaintiff's Fourth Amendment rights, the officers are entitled to summary judgment on the basis of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." Thus, to prevail in the face of a qualified immunity defense, plaintiff must show that: 1) he "has a clearly established statutory or constitutional right," *Megenity v. Stenger,* 27 F.3d 1120, 1124 (6th Cir.1994); and 2) the actions of the officers were "objectively unreasonable in light of [the] clearly established constitutional right." *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994). The burden of proof in a qualified immunity situation lies with the plaintiff. *Washington v. Newsom,* 977 F.2d 991, 995 (6th Cir.1992).

 In the case at bar, defendants are entitled to a qualified immunity defense because their actions cannot be considered "objectively unreasonable." I am, for the reasons stated, persuaded that the garage was not within the curtilage and, thus, not subject to the restrictions imposed by the Fourth Amendment. At most, the curtilage question is one about which reasonable officers—and judges—could disagree. It was, therefore, not unreasonable for the officers to have believed that the plaintiff's garage was out-

side the curtilage of his home some fifty or sixty yards away.

The garage was nearly empty (except for the stolen property), and gave no indicia, aside from placement on the same property, that plaintiff used it for normal residential activities. Under those circumstances, a reasonable officer could err and conclude that he or she could lawfully enter the plaintiff's garage without a warrant or prior consent. That being the case, qualified immunity will attach in this case, and none of the officers can be held liable even if there was a Fourth Amendment violation.

### Municipal Liability Under Section 1983

 Finally, plaintiff has not shown a sufficient basis for holding the City of Tiffin liable under § 1983. In order to set forth a § 1983 claim against a municipality, plaintiff must: 1) establish that he was deprived of a constitutional right; 2) identify an official municipal policy or unofficial custom; and 3) demonstrate how the identified policy or custom served as the "moving force" behind the constitutional violation. *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 1000 (6th Cir. 1994) (*citing Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Plaintiff has not sufficiently met any of these requirements.

 First, as explained above, plaintiff has not identified a deprivation of a constitutional right. The police investigation in question, because it took place outside of the curtilage of plaintiff's residence, does not warrant Fourth Amendment protection. Without constitutional protection, there can be no constitutional deprivation, and plaintiff asserts no other cognizable constitutional deprivation.

Even if the officers did violate the Fourth Amendment, plaintiff does not bring forth

written affidavit could have been prepared (probably within a few minutes), and a judge could have been located. Even if as much as an hour and a half were required to perform those tasks and obtain the warrant, there was no reasonable likelihood that the property, especially with an officer standing guard, would have been removed from the garage. Hall, the burglar, was in custody, and the defendants have not shown any rea-

son to believe that others were involved with him and about to take the property.

As explained above, however, there is no need to rely on the "exigent circumstances" exception—or any other exception—to the Fourth Amendment because the Fourth Amendment simply does not apply to a search of an outbuilding outside the curtilage of a residence.

enough evidence to identify a specific official municipal policy or unofficial custom. Plaintiff alleges that the City of Tiffin failed to implement a policy cautioning officers against the abuse of consensual searches. A failure to have a policy does not, in my view, meet the second requirement of identifying a specific, official municipal policy which can be responsible for an unconstitutional deprivation.

Plaintiff also alleges that "the lack of staff to type the necessary documentation to seek search warrants ... inevitably lead to a custom or practice whereby police officers would develop a preference for conducting searches through consent rather than pursuant to a search warrant." (Doc. 43 at 9). Though the failure to make a typist available may have been inexcusable, such failure does not "inevitably" lead to a custom or practice of preferring consensual searches over searches pursuant to a warrant. A typist is not necessary to the warrant process: a lawful warrant may be written by hand. Plaintiff fails to bring forth any concrete evidence of an official policy or unofficial custom that could have caused an unconstitutional deprivation.

Finally, even if plaintiff had established a constitutional deprivation and identified a specific, concrete policy, custom, or practice, there are no grounds to infer that any such policy or custom was the "moving force" behind the alleged constitutional deprivation in this case. There is merely an attenuated—if any—connection in this case between a preference for consensual searches and the alleged constitutional deprivation. Between their arrival at the house and the alleged violation, the officers took many steps and made several observations pursuant to their investigation. Additionally, the attempt to procure plaintiff's consent in this case was not unjustified because defendant Craig had already established a rapport with plaintiff. If there was any custom of pursuing a consensual search, it made sense to do so in this case.

■ The plaintiff, in my view, has sued the City of Tiffin on the basis of respondeat superior, which is not permissible under 42 U.S.C. § 1983. It is well settled that the City is not responsible in respondeat superi-

or for the actions of its officers—it is responsible only for the consequences of its own policies or customs that create a deprivation of constitutional rights. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). The City of Tiffin's motion for summary judgment, therefore, shall be granted.

### Conclusion

Having concluded that all defendants are entitled to summary judgment as to the § 1983 claims, I decline to exercise supplemental jurisdiction over plaintiff's state law claim of intentional infliction of emotional distress. It is, therefore,

**ORDERED THAT:**

1) defendants' motions for summary judgment (Docs. 34, 35) be, and the same hereby are, granted; plaintiff's motion for summary judgment (Doc. 36) is overruled; and 2) plaintiff's claim for intentional infliction of emotional distress (count II) be dismissed without prejudice for want of subject matter jurisdiction.

So ordered.